Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00021-CR

John William **McBURNETT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR2879B
Honorable Ron Rangel, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  July 5, 2012

AFFIRMED

In three issues, John William McBurnett appeals his conviction for murder. We affirm.

## BACKGROUND

McBurnett was indicted for the murder of Nathan Ramirez and pleaded not guilty. The trial evidence showed that on the night of June 9, 2007, McBurnett and four other men drove in one vehicle to a Quiznos in San Antonio, Texas, to meet with Ramirez. Upon arriving at the Quiznos, the men exited the vehicle. Some or all of the men had a physical altercation with

Ramirez in the parking lot, which was witnessed by the manager of the Quiznos. During the altercation, Ramirez fell to the ground, and the manager fired a handgun once into a nearby field. The purpose of this "warning shot" was to get the men to stop kicking and punching Ramirez and to leave the premises. When the shot was fired, the five men returned to their vehicle and began to drive away. However, as they left the parking lot, one of the men in the vehicle fired a handgun once in Ramirez's direction. Ramirez was hit by a single bullet from this handgun. Ramirez subsequently died as a result of this gunshot wound.

Julio Rodriguez, who was the driver of the vehicle, testified that McBurnett fired the shot that killed Ramirez. Abel Mainez, a passenger in the vehicle, also testified that McBurnett fired the shot that killed Ramirez. McBurnett, who testified in his own defense, disputed this testimony. McBurnett testified he did not fire the shot that killed Ramirez; rather, the shot that killed Ramirez was fired by another passenger in the vehicle, John Rodriguez.

The jury convicted McBurnett of murder. The trial court assessed punishment at forty years' imprisonment. McBurnett appealed.

## LIMITATION ON CROSS-EXAMINATION

In his first and second issues, McBurnett argues the trial court erred in not allowing him to cross-examine Julio Rodriguez about his deferred adjudication status in an unrelated criminal case. McBurnett argues the trial court should have allowed him to cross-examine Rodriguez in front of the jury about whether his deferred adjudication status motivated Rodriguez to testify favorably for the State. In his first issue, McBurnett argues the limitation placed on Rodriguez's cross-examination violated his Sixth Amendment right to confront witnesses. In his second issue, McBurnett argues the limitation placed on Rodriguez's cross-examination violated the Texas

Rules of Evidence, and in particular, Texas Rule of Evidence 611(b).[1] Because these issues are closely related, we address them together.

Rodriguez was one of the State's primary witnesses. After the State's direct examination of Rodriguez, the trial court allowed the defense to question Rodriguez about his criminal history outside the presence of the jury. Defense counsel first elicited testimony that Rodriguez was currently serving deferred adjudication community supervision for burglary of a building. Defense counsel also elicited testimony that the State had filed a motion to adjudicate guilt in Rodriguez's deferred adjudication case, and this motion was pending in the trial court. Defense counsel next elicited testimony indicating that three criminal cases had been filed against Rodriguez in the past. These cases had been dismissed. Defense counsel finally elicited testimony that Rodriguez had two other criminal cases pending against him. At the conclusion of the hearing, the following exchange took place:

| Defense counsel: | So I just respectfully ask the Court for a ruling if I can have the opportunity to visit with [Rodriguez] in the presence of the jury regarding any of these criminal activities. |
|---|---|
| The Court: | The ones that you're specifically relating to are not convictions? None of them; is that correct? |
| Prosecutor: | That is correct, Judge. |
| The Court: | All right. Well, then if they're not convictions, obviously you cannot attempt to impeach him on those. Anything else? |
| Defense counsel: | Nothing further, Your Honor. |
| Prosecutor: | Nothing from the State, Judge. |
| The Court: | Okay. Let's bring in the jury. |

---

[1] Rule 611(b) of the Texas Rules of Evidence provides, generally, that a witness may be cross-examined on any matter relevant to any issue in the case, including credibility. TEX. R. EVID. 611(b).

### 1. *Applicable Law*

"In all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him…" U.S. CONST. amend. VI; *Carroll v. State*, 916 S.W.2d 494, 496-97 (Tex. Crim. App. 1996). The constitutional right of confrontation includes the right to cross-examine witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). Nevertheless, the trial court retains wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Irby*, 327 S.W.3d at 145; *Carpenter*, 979 S.W.2d at 634. The constitutional right to cross-examination concerning a witness's potential bias does not include cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish. *Irby*, 327 S.W.3d at 145 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986)).

"Evidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony." *Irby*, 327 S.W.3d at 148. The proponent of the evidence of potential bias must show that the evidence is relevant. *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004); *Carpenter*, 979 S.W.2d at 634. "For the evidence to be admissible, the proponent must establish some causal connection or logical relationship between the pending charges and the witness'[s] 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Carpenter*, 979 S.W.2d at 634. The type of evidence that could show a causal connection or logical relationship might include

testimony about the existence of a plea bargain agreement or negotiations, or testimony showing the witness's belief regarding the existence or non-existence of any kind of deal in the pending matter. *Id.* at 635 n.5. The trial court does not abuse its discretion in limiting cross-examination on potential bias or motive, when the proponent fails to establish the required causal connection or logical relationship. *See Woods*, 152 S.W.3d at 111-12 (overruling complaint about limited cross-examination when the defendant's offer of proof failed to show a nexus between witness's testimony and his sentence); *Carpenter*, 979 S.W.2d at 635 (overruling complaint about limited cross-examination when the defendant failed to establish a causal connection between pending charges and the witness's testimony).

### 2. Waiver

We first address whether McBurnett's complaints have been preserved for appellate review. Generally, to preserve error for appellate review, the record must show the complaining party "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). The complaining party must have brought to the trial court's attention the very complaint the party makes on appeal. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). To preserve error on an issue concerning the exclusion of evidence, the proponent is required to make an offer of proof and obtain a ruling. *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005).

Here, as shown in the above-quoted exchange, defense counsel never stated he was seeking to cross-examine Rodriguez concerning his potential bias in favor of the State based on his deferred adjudication status, nor did he make an offer of proof about Rodriguez's potential bias. Moreover, it is clear defense counsel's complaint was quite different from the complaint McBurnett is now making on appeal. Defense counsel asked the trial court if he could "visit"

with Rodriguez about his criminal matters in front of the jury. The trial court denied defense counsel's request on the basis that none of Rodriguez's criminal matters involved convictions. *See* TEX. R. EVID. 609(a) (providing a party may impeach a witness with evidence that the witness has been convicted of a crime). Defense counsel mentioned no other basis for pursuing this area of cross-examination. We conclude McBurnett has waived any complaints concerning the limitation on Rodriguez's cross-examination. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Martinez*, 91 S.W.3d at 336; *Reyna*, 168 S.W.3d at 176.

### 3. Merits

Nevertheless, even absent waiver, we would overrule McBurnett's first two issues. The record fails to establish a causal connection or a logical relationship between Rodriguez's deferred adjudication status and his trial testimony. For example, no additional facts were adduced showing the existence of, or the expectation of, a deal or other favorable treatment in Rodriguez's deferred adjudication case. Instead, the record shows only that Rodriguez was placed on deferred adjudication in an unrelated criminal case, and that a motion to adjudicate was pending in that case. The court of criminal appeals has recently held that "the mere fact that a witness is on probation is not sufficient, by itself, to establish a potential bias or motive to testify." *Irby*, 327 S.W.3d at 140, 151-52 (overruling *Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001)). Thus, absent a showing of a causal connection or a logical relationship between Rodriguez's deferred adjudication status and his trial testimony, the trial court did not abuse its discretion in limiting Rodriguez's cross-examination. *See Juneau v. State*, 49 S.W.3d 387, 389-90 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding the trial court properly limited cross-examination when the defendant failed to show a causal connection between the witness's deferred adjudication status and his testimony). Issues one and two are overruled.

**MOTION FOR NEW TRIAL**

In his third issue, McBurnett argues the trial court abused its discretion in denying his motion for new trial on grounds of jury misconduct. We review the trial court's denial of a motion for new trial for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). A new trial must be granted when the jury has engaged in misconduct such that the defendant did not receive a fair and impartial trial. TEX. R. APP. P. 21.3(g). However, Texas Rule of Evidence 606(b) limits the evidence that may be presented to demonstrate jury misconduct. *Hines v. State*, 3 S.W.3d 618, 622 (Tex. App.—Texarkana 1999, pet. ref'd). Texas Rule of Evidence 606(b) provides,

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a jury may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b).

As a result of Rule 606(b), jurors in criminal cases may only testify about outside influences or to rebut a claim of disqualification. *In re S.P.*, 9 S.W.3d 304, 308 (Tex. App.—San Antonio 1999, no pet.). "The plain language of [] Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror." *White v. State*, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007). A juror's injection of his own personal experiences, knowledge, or expertise is not considered an outside influence, because those representations emanate from inside the jury. *Hines*, 3 S.W.3d at 623. A motion for new trial based on jury misconduct must be

supported by a juror's affidavit alleging that outside influence affected the jury's decision. *Id*.; *see* TEX. R. EVID. 606(b).

Here, McBurnett's motion for new trial alleged that jury misconduct during the course of deliberations deprived him of a fair and impartial trial. Attached to McBurnett's motion for new trial was the affidavit of one juror, Penni Harben. The trial court held a hearing on the motion for new trial. Despite the State's repeated objections that Harben's testimony was not admissible under Texas Rule of Evidence 606(b), the trial court allowed Harben to testify. After hearing Harben's testimony, the trial court denied the motion for new trial.

On appeal, McBurnett argues the trial court abused its discretion in denying his motion for new trial because he met his burden of proving jury misconduct under Texas Rule of Appellate Procedure 21.3(g). In support of this argument, McBurnett points to Harben's in-court testimony. In response, the State argues the trial court should have sustained its Rule 606(b) objections to Harben's testimony because her affidavit failed to raise a claim of outside influence. The State further argues the trial court did not abuse its discretion in denying McBurnett's motion for new trial.

We begin our analysis by reviewing Harben's affidavit. In her affidavit, Harben testified that during deliberations "certain events unfolded" that "may have contributed to a verdict of guilty." The first event was Harben informing jurors that she was aware of a scenario in which an individual was convicted of murder under the law of parties even though the evidence showed the accused was in another room when the victim was shot and killed. The second event was a fellow juror's assertion that McBurnett was guilty under the law of parties because he "was present during the crime, the perpetrators were [his] friends, [he] had knowledge of the firearm in the vehicle, and lastly, [he] did not stop the crime from occurring." In concluding her affidavit,

Harben claimed she "voted guilty based upon [her fellow juror's] persuasive argument, not based upon the court's instructions." Harben's in-court testimony was very similar to her affidavit testimony.

Neither Harben's affidavit, nor her in-court testimony, established the requisite outside influence to support a claim of juror misconduct. *See In re S.P.*, 9 S.W.3d at 309; *Hines*, 3 S.W.3d at 623. The statements Harben and the other juror made about the law of parties were clearly statements made by jurors to fellow jurors during deliberations. All of the events and processes described by Harben in her affidavit emanated from inside the jury. *See Hines*, 3 S.W.3d at 623 (holding the jurors' discussion of parole law during deliberations did not amount to outside influence). We, therefore, conclude the trial court did not abuse its discretion in denying McBurnett's motion for new trial. *See Ford v. State*, 129 S.W.3d 541, 550-51 (Tex. App.—Dallas 2003, pet. ref'd) (holding trial court did not abuse its discretion in denying a motion for new trial when the supporting evidence was inadmissible under Rule 606(b)). Issue three is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH